UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG THOMAS,

    Plaintiff,

v.                                                                                                                  Case No. 17-14210

FORD MOTOR COMPANY,                            HON. AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 24)**

I.  Introduction

This is an employment case. Plaintiff/Counter-Defendant Craig Thomas (Thomas) filed a complaint against Defendant/Counter-Plaintiff Ford Motor Company (Ford) claiming retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA). According to the complaint, Thomas says that Ford retaliated against him after he reported to human resources that his manager had instructed him to "write up" his co-worker, Randano Johnson (Johnson), who was on work restrictions. In other words, Thomas says he was asserting rights on behalf of Johnson who was allegedly protected by the ADA and Ford retaliated against him for doing so. Thomas says the retaliation against him took the form of (1) being written up several times for performance issues, known as "coaching or counseling" sessions and (2) termination.[1]

---

[1]As will be explained, the complaint does not contain a claim for retaliatory termination in violation of the ADA and Thomas did not amend the complaint to assert

Before the Court is Ford's motion for summary judgment. For the reasons that follow, the motion will be granted. After a careful review of the meticulous record, there are no facts over which there is a genuine issue regarding whether Thomas was retaliated against in his employment in violation of the ADA.

## II. Background

The material facts as gleaned from the record[2] and the parties' papers follow.

### A. Thomas' Employment

Thomas began working for Ford in 1999 as a Salary Grade 06 production supervisor in the body shop at Ford's Chicago Assembly Plant. He later transferred to Ford's Wixom Assembly body shop, where he worked for two years before being transferred to Ford's Chicago Stamping Plant.

In 2005, Thomas transferred to the facility currently known as Ford's Flat Rock Assembly Plant (FRAP) and worked in material handling. In December 2012, Thomas transferred to FRAP's final line. Thomas did not enjoy working on the final line. He approached James Glass (Glass), his manager, stating that he was interested in transferring to Ford's Woodhaven Stamping Plant. Glass talked to a contact at Woodhaven on Thomas' behalf. Thomas was offered a position at Woodhaven there after a series of interviews. Thomas, however, did not accept the position. Thomas was aware that Woodhaven was not happy he did not report to work since Woodhaven

---

such a claim.

[2]The record contains several exhibits, including Thomas's deposition, declarations from several Ford employees, and relevant portions of Thomas' personnel file related to his performance.

believed he had accepted the offer. In any event, Thomas remained at FRAP.

In August 2013, Thomas transferred to FRAP's stamping department. Over two years later, in December 2015, Thomas was again transferred to the final line. He again reported to Glass and to Chris Hale (Hale).

Shortly after his transfer to the final line, Thomas received a series of documented performance issues, reflected on forms entitled "Notice of Performance Coaching/Counseling" from his managers, including Glass, Hale, and James Watson (Watson). The record contains documented issues on the following dates: December 19, 2015, May 4, 2015, June 7, 2016, July 18, 2016, September 21, 2016, September 23, 2016, September 27, 2016, and September 29, 2016. In broad terms, Thomas received coaching and counseling for conduct such as improperly reporting time for other workers, not meeting objectives, not completing assignments, not being available on the floor when required, failing to upload the "night letter," and being late to meetings.

About a month after the above documented performance issues, a personnel supervisor at FRAP, David Scruggs (Scruggs), who had been informed of Thomas's issues, contacted Mario Spadafora (Spadafora), a human resources representative at Ford to discuss placing Thomas on a Performance Enhancement Plan (PEP). Scruggs explained that Thomas had performance issues and that his supervisors had been given him several coaching and counseling sessions which had not improved his performance. Spadafora assisted Scruggs and Watson in finalizing a PEP for Thomas. On October 26, 2016, Thomas as was placed on a PEP which was set to end on December 7, 2016. The PEP set forth several objectives for Thomas to meet based on

3

his prior performance issues and included weekly meetings with Watson. As the end date approached, Watson did not believe Thomas had improved.

About a month into the PEP, in November of 2016, human resources received a "hotline" call from Thomas. The hotline is used by Ford employees to report employment related complaints. According to Spadafora's declaration, Thomas complained that he felt he had been unfairly coached/counseled by his prior manager (Glass) in July 2016 for refusing Glass's request to write up an hourly worker, presumably Johnson, for a "nit picky" reason. Thomas said he believed his refusal led to Glass writing him up for performance issues. There is no indication in the record that mentioned Johnson or the ADA during the call. Spadafora took no action regarding the call, believing that in light of Thomas' documented performance issues since December 2015, the best course of action was to continue with the PEP.

Moreover, Spadafora states that he received reports that Thomas' behavior was escalating to "open hostility toward Scruggs and Watson in response to their continued efforts to coach him on where he needed to improve." Spadafora also learned that Thomas was "resorting to physically intimidating conduct" toward Watson what had been "witnessed by others and that appeared to be escalating further."

In early December, Scruggs asked Spadafora for guidance about initiating Thomas' discharge under Ford's Career Transition Program (CTP) because he had not improved under the PEP. Under the CTP, Thomas was going to be offered a severance payment of $42,876.50 in exchange for Thomas executing a release of claims against Ford.

By January 12, 2017, Spadafora had approved of offering Thomas the CTP. Per

Ford's policies, Joseph Closurdo, FRAP's final area manager and Watson's supervisor, and Jeff Carrier, FRAP's plant manager, also gave their approval for the CTP. On January 13, 2017, Ford's human resources manager for Ford North America manufacturing operations, James Brown, gave his approval as did Spadafora's managers, Sue Mosley and Julie Lavender. Spadafora then instructed Scruggs and Watson to present Thomas with the CTP when he reported to work on January 13, 2017.

Thomas, however, did not show up for work on January 13. On January 12, unbeknownst to Spadafora, Scruggs, or Watson, Thomas had apparently obtained a medical leave for stress from January 12 until April 11, 2017. Spadafora advised Scruggs to notify Thomas of his discharge and offer him the CTP upon his return from medical leave.

In April, when Thomas was released from leave and returned to work, he was terminated and offered the CTP. Thomas did not accept the CTP and was therefore terminated without being entitled to a severance.

B. Thomas' EEOC Charges and Events After Termination

On February 16, 2017, while Thomas was on medical leave, he filed a charge with the EEOC, claiming ADA retaliation. The charge reads in pertinent part:

> In July 2016, I went to Human Resources and reported mistreatment of a co-worker with a disability. Since then I have been subjected to retaliation. I have received a number of coaching and disciplinary actions. In have also been subjected to different terms and conditions of employment. I have not received overtime or shirt premiums. I feel that this was done in retaliation for reporting my Supervisor.
>
> I believe I have been retaliated against by being disciplined, and by being subjected to different terms and conditions of employment for having engaged in

5

protected activity in violation of the Americans with Disabilities Act...

In September 2017, five months after his termination, Thomas filed a second charge with the EEOC, claiming his termination was in retaliation for filing the first charge.

At some point after his termination, Ford mistakenly sent Thomas a check for $42,876.50 as a severance payment. Despite letters from Ford to either return the severance or keep it and execute a release of claims, Thomas did neither. Rather, he kept the severance and did not execute a release of claims.

## C. Procedural History

On December 28, 2017, Thomas filed his complaint. Ford filed a counterclaim based on Thomas' refusal to return the severance. Thomas did not answer or otherwise defend the counterclaim. The Clerk eventually entered a default and default judgment in the sum certain of $42,876.50. The case was then reassigned to the undersigned following the retirement of the original district judge. While Thomas' counsel indicated they would be filing a motion to amend the complaint to add a claim of retaliatory termination, no such motion was ever filed. Thomas did file a motion to set aside the default judgment which the Court denied because, among other things, Thomas had not shown he had a meritorious defense to keeping the severance.

## III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of

evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue

of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," Hager v. Pike County Bd. Of Educ., 286 F.3d 366, 370 (6th Cir. 2002).

IV. Discussion

A. Retaliation in the Form of Termination

As an initial matter, Ford is correct that Thomas cannot make out a triable claim that he was terminated in retaliation for filing his first charge claiming ADA retaliation. First, at the time the complaint was filed, the EEOC had not issued a right to sue letter based on his second charge and Thomas never amended the complaint to allege a claim of retaliatory termination. Second, the record is clear that the decision to terminate Thomas and offer him a CTP was made in January 2016. His first EEOC charge was made months later, in September 2016. Thus, Ford could not have terminated him in violation of the ADA when the decision to terminate him preceded his first charge.

B. Retaliation in the Form of Increased Performance Write Ups

Thus, the only question is whether Thomas has presented sufficient evidence to show that he was retaliated against in violation of the ADA for complaining that he was told to "write up" his co-worker and that the retaliation was in the form of receiving documented performance write ups, i.e. coaching/counseling sessions, because of his complaint about his co-worker's treatment.

1. Legal Framework

The ADA's retaliation provision makes it unlawful for an employer to "discriminate

8

against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A prima facie case of retaliation requires evidence that: (1) the plaintiff engaged in legally protected activity under the ADA; (2) the defendant knew of the plaintiff's exercise of that right; (3) the defendant took an employment action against the plaintiff; and (4) the protected activity and the employment action are causally connected. Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014). Plaintiff must show "but for" causation. Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

"If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." Penny v. United Parcel Serv., 128 F.3d 408, 417 (6th Cir. 1997). The plaintiff bears the burden of proving that the defendant's "proffered reason for the action was merely a pretext for discrimination." Id. (citation omitted).

2. Application

Ford says that Thomas cannot make out a prima facie case because he has not shown that he engaged in protected activity or that there is a causal connection between any protected activity an adverse employment action.

Regarding protected activity, Thomas' retaliation claim is not concerning his own disability but rather because he opposed an act against his co-worker, Johnson.

Apparently, Johnson had a back problem and was working with restrictions.[3]

Thomas says that in July 2016 his supervisor, Glass, instructed him [Thomas] to write up Johnson for a "defect" in Johnson's area and Thomas complained about Glass' instruction to human resources. There are several reasons why Thomas' allegation does not support a prima facie case of ADA retaliation.

First, Ford's records show that Glass, not Thomas, wrote Johnson up on July 13, 2016 for a defect. Second, Thomas testified at deposition that he was "not certain" as to how he alerted human resources about Glass' instructions. He testified he may have sent an email or communicated to human resources orally. The record, however, contains no such email from Thomas. Moreover, while Thomas testified he was aware that discrimination complaints must be in writing, the record does not contain any evidence of a written complaint. The only evidence of a complaint is from Spadafora's declaration in which he recounts a phone call Thomas made to the hotline.

The record contains declarations from the human resources managers eligible for handling discrimination complaints. Both state that they did not receive a complaint by Thomas, regarding Johnson or any other matter. The absence of a record of a complaint is fatal to his claim. "A basic requirement of establishing a prima facie case of

---

[3] A search of Court records show that Johnson sued Ford claiming discrimination under the ADA and Michigan's Persons With Disabilities Civil Rights Act. See Johnson v. Ford, 17-11412. According to the record in Johnson's case, he claimed that from July 2015 through March 2016, Ford failed to accommodate his work restrictions by returning him to his position as a process coach. Johnson did not assert a claim related to the time period after April 2016 because he was reemployed in his prior position with his work restrictions. The district judge granted Ford's motion for summary judgment. See Doc. 45 in case no. 17-11412. Johnson has appealed. See Doc. 47 in case no. 17-11412.

retaliation is that the employer must be aware of the employee's statutorily protected expression before adverse action is taken against the employee." Hammer v. Unity Comm. Hosps. of Indiana, 92 F. Supp. 2d 803, 806-70 (S.D. Ind. 2000). See also Marotta v. Ford Motor Co., 119 F. Supp. 3d 676, 696 (plaintiff failed to establish a prima facie case for gender retaliation where human resources had not record of such a complaint).

Moreover, even assuming Thomas did complain to human resources, he was not clear at deposition as to exactly what he said. Thomas said he told someone in human resources that Glass had a "personal issue" with Johnson returning from leave with a work restriction. Thomas further testified at deposition that Glass said "we're not going to allow [Johnson] to come back because he has a eight-hour restriction." Thomas conceded he did not know whether Johnson had an ADA qualifying disability or that Ford was aware of or regarded Johnson as disabled. Moreover, as of July 2016, Johnson had been at work for three months and working within his restriction. See n. 3 supra. Thomas' statement does not suggest that he reasonably believed he was opposing unlawful discrimination against Johnson as of July 2016, when Johnson was admittedly back at work. See Johnson v. University of Cincinnati, 215 F.3d 561, 579-80(6th Cir. 2000)(opposition to discrimination "must be based on 'a reasonable and good faith belief that the opposed practices were unlawful.'" In short, no reasonable juror could find based on the record that Thomas engaged in any protected activity relative to Johnson.

Even assuming Thomas engaged in protected activity, Ford is correct that

Thomas cannot show causation. Thomas says that his "coaching and counseling" write ups began after he complained about Glass' treatment of Johnson in July of 2016. Putting aside that Ford does not consider "coaching and counseling" to be adverse employment actions, the record of Thomas' discipline shows that he was given "coaching and counseling" starting at his arrival at the final line in December of 2015. Glass and other supervisors counseled and coached Thomas at a relatively steady pace from December 2015 to October 2016 when management believed Thomas needed to be placed on a PEP. Thus, Thomas' complaint about Johnson could not reasonably be said to have caused the coaching and counseling sessions, many of which predated any complaint Thomas made. No reasonable juror could conclude otherwise.

V. Conclusion

For the reasons stated above, Thomas has failed to make out a triable claim for ADA retaliation. Ford's motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 3/5/2019
    Detroit, Michigan